GRIFFITHS, RESPONDENT, *v.* THRASHER, DEFENDANT; THOMAS, INTERVENER AND APPELLANT.

(No. 7,094.)

(Submitted October 5, 1933. Decided October 28, 1933.)

[26 Pac. (2d) 983.]

*Mr. John T. Andrew* and *Mr. W. H. Maloney,* for Appellant, submitted a brief; *Mr. W. H. Holliday,* of Counsel, argued the cause orally.

*Mr. J. A. Poore* and *Mr. W. D. Kyle,* for Respondent, submitted a brief; *Mr. Kyle* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action on February 14, 1931, to foreclose a chattel mortgage executed and delivered to her by defendant, Margaret Thrasher, on April 19, 1928. The mortgage covered the furniture and fixtures of a rooming-house in Butte known as the Park Block, and secured an indebtedness of

$5,500 as part of the purchase price of the furniture and fixtures. It was filed, but never renewed.

The indebtedness was represented by fifty-five promissory notes for $100 each, drawing eight per cent. interest and payable, respectively, June 1, 1928, and the first of each month thereafter to and including December 1, 1932. The notes maturing before June 1, 1930, were paid, but neither principal nor interest was paid on the note maturing June 1, 1930, or on those maturing thereafter. In addition to seeking a judgment for the balance due, amounting to $3,000 with interest and for the foreclosure of the mortgage, plaintiff sought a mandatory injunction for the return of a portion of the property to the Park Block, alleged to have been removed by the mortgagor to places unknown to the plaintiff, and an injunction preventing further removal of the property from the Park Block and preventing disposal of the property *pendente lite*.

Upon the filing of the complaint an order to show cause was issued and served upon defendant. In response to the order to show cause, a hearing was had at which intervener, Pearl Thomas, was present and testified. During the hearing it was stipulated by plaintiff and defendant that pending the action nothing would be done by either party to interfere with the then status of the property. Upon the conclusion of the hearing, and on March 2, 1931, the court entered an order enjoining defendant *pendente lite* from disposing of, or in any manner encumbering or removing, the property from Silver Bow county, upon plaintiff executing and filing an undertaking. The undertaking was filed on March 3.

On the afternoon and night of March 2, defendant caused the mortgaged property to be removed from the Park Block to the warehouse of the Bacon Transfer Company in Butte, Silver Bow county. On March 3, intervener, Pearl Thomas, daughter of the defendant, Thrasher, filed a complaint in the district court of Silver Bow county against defendant, Thrasher, on a labor claim due her and on claims of others which had been

assigned to her, and on the same day caused a writ of attachment to be issued and levied on the property. Substantially all these claims were for labor performed and money loaned after the lapse of two years and sixty days from the filing of plaintiff's mortgage.

On March 4 plaintiff in this action commenced an action against defendant in claim and delivery to recover possession of the property. On March 9 intervener delivered to the sheriff notice and affidavit of third-party claim. Plaintiff here on March 11 delivered to the sheriff an indemnifying bond which was approved by the court, and on March 13 the property was delivered by the sheriff to this plaintiff. This action was noticed for trial on July 20, 1931.

On July 18 Pearl Thomas was granted leave to file a complaint in intervention. The complaint was based upon intervener's rights as an attaching creditor. A stipulation was entered into between plaintiff and defendant and intervener, as follows: "At all times since the date of the making and execution of the chattel mortgage involved in the above-entitled action, [intervener] has had actual knowledge of the existence of said mortgage and of the debt secured thereby, and that since the commencement of the above-entitled action she has had actual knowledge of its pendency."

The trial was to the court sitting without a jury. Defendant offered no evidence at the trial. The controversy was between plaintiff and intervener. The court made findings and rendered judgment for plaintiff for the foreclosure of her mortgage and adjudged that intervener had no lien on the property and dismissed her complaint in intervention. The appeal is by the intervener. She assigns numerous specifications of error.

There is no dispute as to the facts. The controversy is waged over the law applicable to the admitted facts. The principal question presented is the effect of the omission to file the renewal affidavit under section 8280, Revised Codes 1921, as against Pearl Thomas, a creditor, who levied attachment after the expiration of two years and sixty days from the

filing of the mortgage, and who at the time knew of the pendency of the action to foreclose the mortgage.

At the threshold of the case we are met with the contention by intervener that the question has already been determined in this state in her favor, by the case of *Rosenbaum Bros. & Co.* v. *Ryan Bros. Cattle Co.*, 33 Mont. 424, 84 Pac. 1120. This contention cannot be sustained in view of the difference between the statute there considered and the statute governing this case. The statute which controlled the *Rosenbaum Case* was section 3865 of the Civil Code of 1895, which, without change, became section 5762, Revised Codes of 1907. It provided that "every mortgage * * * is * * * good and valid as against the creditors of the mortgagor or subsequent purchaser, or incumbrancers, from the time it is so filed until the maturity of the entire debt or obligation secured thereby and for the period of sixty days thereafter." That statute makes no reference to the good faith of either the creditor, purchaser or encumbrancer. By Chapter 86, Laws of 1913, the statute involved in the *Rosenbaum Case* was repealed and in lieu thereof there was enacted section 5, reading as follows: "A mortgage of personal property executed and filed as hereinbefore provided, ceases to be valid as against creditors of the mortgagor and subsequent purchasers or incumbrancers in good faith after the expiration of two years and sixty days from the filing thereof, except as hereinafter provided."

Chapter 152, Laws of 1919, amended section 5 above, to read in part as follows: "A mortgage of personal property, executed and filed as hereinbefore provided ceases to be valid as against creditors of the mortgagor or subsequent purchaser or incumbrancer in good faith, after the expiration of two years and sixty days from the filing thereof except as hereinafter provided." As thus amended the law now appears as section 8279, Revised Codes of 1921. This change in the statute by the insertion of the words "in good faith" presents a problem not before the court in the *Rosenbaum Case*. The question now before us is whether the words "in good faith,"

as used in the statute, refer to "creditors" as well as "subsequent purchasers" and "encumbrancers," and, if so, whether intervener here is a creditor "in good faith."

The question was before us in *Hansen* v. *Johnson*, 90 Mont. 597, 4 Pac. (2d) 1088, but was not passed upon in view of the theory on which the case was tried by respective counsel. In that case we call attention to the case of *Cardenas* v. *Miller*, 108 Cal. 250, 39 Pac. 783, 41 Pac. 472, 474, 49 Am. St. Rep. 84, which held that the words "in good faith" in a statute very similar to ours did not apply to creditors. In *Swiggett* v. *Dodson*, 38 Kan. 702, 17 Pac. 594, *Farmers' Loan etc. Co.* v. *Hendrickson*, 25 Barb. (N. Y.) 484, *Stevens* v. *Buffalo etc. R. R. Co.*, 31 Barb. (N. Y.) 590, *Karst* v. *Gane*, 136 N. Y. 316, 32 N. E. 1073, *Sayre* v. *Hewes*, 32 N. J. Eq. 652, *Brothers* v. *Mundell*, 60 Tex. 240, and *Farmers' etc. Bank* v. *Anthony*, 39 Neb. 343, 57 N. W. 1029, the like conclusion was reached under a statute reading: "Every mortgage so filed shall be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith," etc.

In *First National Bank of Yankton* v. *Magner*, 47 S. D. 80, 195 N. W. 1020, 1021, the supreme court of South Dakota had before it a statute reading: "A mortgage of personal property ceases to be valid as against creditors of the mortgagor, and subsequent purchasers or incumbrancers in good faith," etc. It held that the words "in good faith" did not apply to creditors.

The supreme court of North Dakota, under an identical statute, reached the opposite conclusion. (*Hanson* v. *Blum*, 53 N. D. 526, 207 N. W. 144.)

When the statute in terms makes the mortgage void as against every one but the parties thereto, it is, of course, clear that the "good faith" does not enter into the case. Such is the rule announced in *Simpson* v. *Harris*, 21 Nev. 353, 31 Pac. 1009.

Under a statute practically identical with ours, the supreme court of Wisconsin, in *Graham* v. *Perry*, 200 Wis. 211, 228

N. W. 135, 137, 68 A. L. R. 267, said: "The only effect of a failure to file an affidavit of renewal is to render the chattel mortgage invalid as against subsequent purchasers or mortgagees in good faith or creditors who thereafter acquire liens upon the property. (*Ullman* v. *Duncan,* 78 Wis. 213, 9 L. R. A. 683, 47 N. W. 266.)" (See, also, note in 51 A. L. R. 598.)

It is, of course, apparent that some of the foregoing cases dealt with a statute quite different from ours. The Wisconsin and California statutes, however, are practically identical with ours, and we think were correctly construed by the courts of those states. We hold that the words "in good faith," in section 8279, supra, do not apply to a creditor of the mortgagor.

Plaintiff, in reliance upon the doctrine of *lis pendens,* contends that, since the intervener levied her attachment with full knowledge of the pendency of the action to foreclose the mortgage, she acquired no lien superior to the mortgage. With this contention we do not agree. Here it must be conceded that between plaintiff and defendant, Margaret A. Thrasher, the mortgage, though not renewed, was good and valid. (*Isbell* v. *Slette,* 52 Mont. 156, 155 Pac. 503; *Herd* v. *Freeman,* 84 Mont. 32, 273 Pac. 1047; *Doering* v. *Selby,* 75 Mont. 416, 244 Pac. 485; *Morton* v. *Union Central etc. Co.,* 80 Mont. 593, 261 Pac. 278.)

Under section 10558, Revised Codes 1921, a person acquiring title to property during the pendency of an action affecting it, is concluded by the judgment if he has notice of the pendency of the action. (See *State ex rel. Thelen* v. *District Court,* 93 Mont. 149, 17 Pac. (2d) 57.) But the judgment in this action, as between plaintiff and defendant, would merely establish the validity of the mortgage as between them. Intervener here is not disputing the validity of the mortgage as between the parties to it. She is asserting that, under the statute, as to her the mortgage ceased to exist; that under the facts, no renewal affidavit having been filed, as to her the situation is

as though no mortgage had ever been made. Her position in this respect is sustained by the authorities. (*First National Bank of Rock Springs* v. *Ludvigsen,* 8 Wyo. 230, 56 Pac. 994, 57 Pac. 934, 80 Am. St. Rep. 928; *Thompson* v. *Vechten,* 27 N. Y. 568; *Herrick* v. *King,* 19 N. J. Eq. 80; *Porter* v. *Parmley,* 52 N. Y. 185; *In re Leslie-Judge Co.,* (C. C. A.) 272 Fed. 886, 888.) And by analogy, see *Karst* v. *Gane,* 136 N. Y. 316, 32 N. E. 1073; *Stephens* v. *Perrine,* 143 N. Y. 476, 39 N. E. 11; *Maggio* v. *Acierno,* 121 Misc. 30, 200 N. Y. Supp. 741; *Van Houten's Estate,* 18 App. Div. 301, 46 N. Y. Supp. 190; *Swift* v. *Hart,* 12 Barb. (N. Y.) 530.

There is authority to the effect that if foreclosure proceedings are instituted while the mortgage is valid and subsisting as against everyone, and the proceedings have progressed to the stage where it can be said that the mortgagee had assumed possession of the property at the time the attachment was levied, then the mortgage has priority over the attachment lien. (See *Kratzmer* v. *Detroit Lumber Co.,* 195 Mich. 570, 161 N. W. 817, and authorities therein cited.) But here plaintiff had not assumed possession of the property at the time the attachment was levied. The pendency of the foreclosure action did not accomplish a change of possession. That the pendency of the action to foreclose the mortgage did not ipso facto work a constructive change of possession from the mortgagor to the mortgagee is made plain by section 8286 of our statute, which authorizes the joinder in a foreclosure action of one for the recovery of the possession of the mortgaged property. If the institution of foreclosure proceedings worked a constructive change of possession, there would have been no object in authorizing the joinder of an action for the recovery of the possession of the mortgaged property.

Plaintiff also contends, and the court found, that the property was *in custodia legis* at the time the attachment was made, and that, therefore, the attachment was ineffectual. This position is untenable on the record. It is true that as against defendant, Margaret A. Thrasher, there was an

injunction preventing a transfer or encumbrance of the property. Intervener was not a party to the action when the restraining order was made. It operated against the defendant only and not against the property. It prevented voluntary action by defendant tending to injure plaintiff in her rights under the mortgage. But that restraining order had no effect upon intervener's right to levy the writ of attachment. The property itself was not *in custodia legis* so as to prevent the attachment. Had plaintiff so desired, she might have taken possession of the mortgaged property under the terms of the mortgage upon default of the mortgagor. This she did not do but instituted this action for foreclosure of the mortgage. She did not have a receiver appointed under section 9301, Revised Codes 1921, to take possession of the property and thus place it *in custodia, legis.* At the time intervener caused the writ of attachment to be levied, there was nothing preventing her from doing so.

By so doing, there was no attempt to interfere with the foreclosure proceeding. It was simply a step taken by the creditor to obtain a lien on the property and thus place her in a position to intervene in the foreclosure action. That such a lien may be obtained *pendente lite*, with the subsequent right of intervention, is well settled. (42 C. J. 62.) The creditor by attaching the property and intervening in the foreclosure action is not attempting by the attachment proceeding to oust the court first acquiring jurisdiction over the *res* of such jurisdiction within the meaning of the rule announced in *Farmers' Loan & Trust Co.* v. *Lake St. El. R. Co.,* 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, *Kline* v. *Burke Const. Co.,* 260 U. S. 226, 43 Sup. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077, *Harkin* v. *Brundage,* 276 U. S. 36, 48 Sup. Ct. 268, 72 L. Ed. 457, *Louisville Trust Co.* v. *Knott,* (C. C. A.) 130 Fed. 820, 7 R. C. L. 1068, and other authorities cited and relied upon by plaintiff.

The court erred in finding the plaintiff's mortgage superior to the lien of the attachment. The judgment is reversed and

the cause remanded, with direction to enter judgment for intervener.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

Rehearing denied November 20, 1933.